Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  lglancy@glancylaw.com
        rprongay@glancylaw.com

*Liaison Counsel for Lead Plaintiff,*
*Plaintiffs and the Proposed Class*

Jeremy A. Lieberman (*pro hac*)
Matthew L. Tuccillo (*pro hac*)
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        mltuccillo@pomlaw.com

*Lead Counsel for Lead Plaintiff*
*and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IN RE TESLA MOTORS, INC. SECURITIES LITIGATION | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 3:13-cv-05216-CRB <br><br> CLASS ACTION <br><br> **OPPOSITION TO THE MOTION OF TESLA MOTORS AND ELON MUSK UNDER RULE 59(e) TO AMEND THE JUDGMENT BY CONDUCTING THE PSLRA'S MANDATORY RULE 11 INQUIRY AND IMPOSING SANCTIONS** <br><br> Hon. Charles R. Breyer |

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

SUMMARY OF ARGUMENT ..........................................................................................1

PROCEDURAL HISTORY................................................................................................4

PLAINTIFFS' COUNSEL'S CONDUCT...........................................................................6

    Pre-SAC Investigation ........................................................................................... 6

    Post-SAC Investigation.......................................................................................... 8

DEFENSE COUNSEL'S CONDUCT ..............................................................................10

    Violation of Confidentiality................................................................................. 10

    Pre-Determination to Pursue Rule 11 Remedies ................................................. 10

    Mischaracterizations In The Motion .................................................................... 11

    Assent and Non-Opposition To The Pleading At Issue ........................................ 11

    Baseless Arguments in the Motion ...................................................................... 12

    Impeding Lead Counsel's Investigation .............................................................. 12

    Marketing Based on the Motion .......................................................................... 14

ARGUMENT ...................................................................................................................14

    I.      Applicable Legal Standards ..................................................................14

            A.     Rule 11 Is An Extraordinary Remedy With Mandatory
                   Prerequisites...............................................................................14

            B.     The PSLRA Sets A High Sanctions Threshhold And Mandatory
                   Protections..................................................................................15

    II.     The Court Should Not Find Any Violation Of Rule 11 ..................................16

            A.     Defendants Failed To Comply With The Rule 11 "Safe Harbor" .....................16

            B.     The SAC And Its Claims Readily Pass Rule 11 Scrutiny Based On
                   Its Core Allegations And Plaintiffs' Related MTD Arguments.........................17

                 SAC's Non-False Statement Allegations........................................ 17

i

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

Failure to Disclose the Mexico Fire........................................................... 17

Failure to Disclose the Decisions Compromising Safety ................................. 18

Failure to Disclose the Pre-Class Period Fires...................................... 19

C.    The Only Other Allegations At Issue In The Motion Do Not Justify
      Sanctions.........................................................................................21

Tennessee Fire ..................................................................................... 21

NHTSA Test Results............................................................................ 22

"Safest Car in America"....................................................................... 22

Lack of a "Recall"................................................................................ 23

Q3 2013 Deliveries .............................................................................. 23

Toronto Garage Fire ............................................................................ 24

D.    Lead Counsel Conducted A Reasonable And Competent Inquiry....................24

III.    Defendants Should Not Be Awarded The Sanction Of Fees .........................................25

CONCLUSION................................................................................................................25

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Abner Realty, Inc. v. Admin. Gen'l Svcs. Admin.*,
No. 97 Civ. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) ................................ 25

*Aizuss v. Commonwealth Equity Trust*,
847 F. Supp. 1482 (E.D. Ca. 1993) ................................ 24

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009) ................................ 16, 25

*Avila v. Los Angeles Police Dept.*,
No. 12-55931, 2014 WL 3361123 (9th Cir. Feb. 6, 2014) ................................ 17, 18, 19

*Barber v. Miller*,
146 F.3d 707 (9th Cir. 1998) ................................ 15, 16

*Basic v. Levinson*,
485 U.S. 224 (1988) ................................ 20

*Benedict v. Hewlett-Packard Co.*,
No. 13-CV-00119-LHK, 2014 WL 234207 (N.D. Cal. Jan. 21, 2014) ................................ 21, 23

*Berson v. Applied Signal Tech.*,
527 F.3d 982 (9th Cir. 2008) ................................ 18, 19

*Betta Prods., Inc. v. Dyakon*,
No. C 05-02274 CRB, 2008 WL 4167277 (N.D. Cal. Sept. 8, 2008) ................................ 21

*Bredehoft v. Alexander*,
686 A.2d 586 (D.C. 1996) ................................ 14

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ................................ 18, 19

*Burekovitch v. Hertz*,
No. 01-cv-1277 (ILG), 2001 WL 984942 (E.D.N.Y. July 24, 2001) ................................ 12, 16

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ................................ 14

*DeMarco v. Depotech Corp.*,
131 F. Supp. 2d 1185 (S.D. Cal. 2001) ................................ 15

*Glassman v. Computervision Corp.*,
90 F.3d 617 (1st Cir. 1996) ................................ 20

*Great Dynasty Int'l Fin. Holdings Ltd. v. Li*,
No. C-13-1734 EMC, 2014 WL 3381416 (N.D. Cal. July 10, 2014) ................................ 16

iii

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................ 18, 19, 20

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ...................................................................... 14, 17, 20, 21

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ................................................................................... 20

*In re Dura Pharm., Inc. Sec. Litig.*,
  No. 99 CV 0151-L (MLLS), 2000 WL 33176043 (S.D. Cal. July 11, 2000) ................... 20

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................................... 19

*In re Keegan Mgmt. Co. Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ...................................................................................... 14

*In re Pfizer, Inc. Sec. Litig.*,
  584 F. Supp. 2d 621 (S.D.N.Y. 2008) ........................................................................ 20

*In re Star Gas Sec. Litig.*,
  745 F. Supp. 2d 26 (D. Conn. 2010) .......................................................................... 25

*In re Viropharma, Inc. Sec. Litig.*,
  No. Civ. A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ................................ 20

*Johnson v. Hewlett-Packard Co.*,
  No. C 09-03596 CRB, 2014 WL 3703993 (N.D. Cal. July 24, 2014) ............................ 21

*Kelter v. Associated Fin. Group, Inc.*,
  382 Fed. Appx. 632 (9th Cir. 2010) ........................................................................... 15

*Kotakis v. Gruntal & Co.*,
  No. C 97-0202 CRB, 2000 WL 1006541 (N.D. Cal. July 11, 2000) .......................... 17, 21

*Kushner v. D.B.G. Prop. Investors, Inc.*,
  793 F. Supp. 1161 (S.D.N.Y. 1992) ........................................................................... 24

*Lowery v. Blue Steel Releasing, Inc.*,
  261 Fed. Appx. 17 (9th Cir. 2007) ............................................................................. 16

*Matrixx Initiatives, Inc. v. Siracusana*,
  131 S. Ct. 1309 (2011) ......................................................................................... 18, 19

*McKay v. Ingleson*,
  558 F.3d 888 (9th Cir. 2009) ............................................................................... 17, 19

*McMahon v. Best*,
  No. C-00-00616 CRB, 2000 WL 1071828 (N.D. Cal. July 21, 2000) ........................ 17, 20

*Nazir v. United Air Lines*,
  No. CV 09-01819 CRB, 2009 WL 2912518 (Sept. 9, 2009) ......................................... 21

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

*Operating Eng'rs. Pension Trust v. A-C Co.*,
  859 F.2d 1336 (9th Cir. 1988) ........................................................................ 14

*Polar Int'l Brokerage Corp. v. Reeve*,
  196 F.R.D. 13 (S.D.N.Y. 2000) ........................................................ 12, 16, 25

*Polar Int'l Brokerage Corp. v. Reeve*,
  108 F. Supp. 2d 225 (S.D.N.Y. 2000) .................................................... 25

*Polar Int'l Brokerage Corp. v. Reeve*,
  187 F.R.D. 108 (S.D.N.Y. 1999) ............................................................ 25

*Richter v. Achs*,
  174 F.R.D. 316 (S.D.N.Y. 1997) ............................................................ 15

*Roberts v. Peat, Marwick, Mitchell & Co.*,
  857 F.2d 646 (9th Cir. 1988) ........................................................ 11, 12, 13

*Sable v. Southmark/Environ Capital Corp.*,
  819 F. Supp. 324 (S.D.N.Y. 1993) ........................................................ 24

*SF Chapter of A. Philip Randolph Inst. v. U.S. Envt'l Prot. Agency*,
  No. C 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ................ 21

*Stiglich v. Contra Costa Cnty. Bd. of Sup'rs*,
  106 F.3d 409, 1997 WL 22410 (9th Cir. 1997) .............................. 21, 23

*Universal Trading & Inv. Co. v. Dugsbery, Inc.*,
  No. C 08-03632 CRB, 2011 WL 1302255 (N.D. Cal. Apr. 5, 2011) ............ 17

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
  556 F.3d 815 (9th Cir. 2009) ........................................................ 16

## STATUTES

15 U.S.C. § 78u-4(c) ............................................................................... *passim*

42 U.S.C. § 1985(3) ............................................................................... 21

## RULES

Fed. R. Civ. P. 11 ............................................................................... *passim*

Fed. R. Evid. 408 ............................................................................... 5, 10

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

## SUMMARY OF ARGUMENT

This lawsuit has never been about whether the Model S was or is categorically "safe" or "unsafe" as a black-or-white dichotomy.  At issue is whether Tesla's stock price was inflated between August and November 2013 due to Defendants' statements or omissions about the Model S – as it was marketed and sold *then*, as Tesla's sole product, *before* safety modifications made later.  In full compliance with the Private Securities Litigation Reform Act ("PSLRA"), pre-discovery, Plaintiffs identified with particularity the allegedly false or misleading statements, the alleged bases for scienter, and the causal connection to nine subsequent corrective events that drove total declines in Tesla's stock price of $87.64 per share, correlating to an aggregate loss of nearly $9 billion in Tesla's market capitalization from the stock's Class Period high water mark.  *See* Exh. 1.[1]

The Court disagreed that Plaintiffs met the PSLRA's heightened pleading burdens, so it dismissed their claims.  Plaintiffs respect the Court's decision and the time and attention spent rendering it.  In light of it, they have no further opportunity now to amend.  As such, and mindful of the Court's views expressed at oral argument and in its decision, Plaintiffs are pursuing an appeal of certain aspects of its rulings.  This was a well-publicized, hard-fought win for Defendants in the trial court.

Not content, the instant Motion attacks Plaintiffs and their counsel as unethical and "dishonest" for having pursued the case at all.  In reality, Defendants ask the Court to be the first ever to award sanctions to a party whose counsel: (a) *assented* to the filing of the purportedly baseless pleading, representing "*We are not opposed to these amendments*"; (b) *actively impeded* the purportedly deficient investigation; (c) ignored the *mandatory* "safe harbor" provisions of Rule 11(c)(2); and (d) filed a sanctions brief that itself *failed to comply with Rule 11* and *ignored* the bulk of the challenged pleading and all legal arguments presented to the Court.  This Court should decline to do so.

Lead Counsel Pomerantz LLP is one of the oldest, most-respected securities litigation firms in the U.S, having recovered over $1 billion for investors over its 75+ year history.  *See* Exhs. 13-14. Neither it nor its attorneys on this matter have ever been sanctioned under Rule 11.  *See* Tuccillo Decl.

---

[1] All "Exh." references, unless otherwise noted, are to Exhibits to the Declaration of Matthew L. Tuccillo ("Tuccillo Decl.").  The Declaration of Jeremy A. Lieberman is the "Lieberman Decl."  All "¶" references, unless otherwise noted, are to paragraphs in the Second Amended Complaint ("SAC"). Defendants' motion (Dkt. No. 59) is the "Motion" and the memorandum in support is "Def. Br." herein.

1
Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

¶30; Lieberman Decl. ¶¶4-5. They take their reputations and their enforcement role under the federal securities laws very seriously, always mindful of Rule 11 and other ethical obligations. *Id.*

This case was no different. Lead Counsel conducted a thorough investigation into the alleged facts and pleaded claims, incurring over $██████ in out-of-pocket costs, including $███████████ ███████████ $██████████ alone, and devoting over $██████ in lodestar through the motion to dismiss hearing. *See* Tuccillo Decl. ¶31. Throughout, Lead Counsel was so mindful of ethical obligations that, in many instances, they voluntarily held back information, discussed below, corroborating their claims, but which, in their judgment, raised concerns.

The Motion's discussion of "admonishments" purportedly given is highly misleading.[2] On the February 10, 2014 call, Defense Counsel threatened that Musk is a "big personality" who "will view things personally" and "will carry through remedies to the end." *Id.* at ¶32. The shorter April 11, 2014 call relayed a similar message. *Id.* ***Both*** calls occurred ***before*** Plaintiffs amended the initial complaint. Thus, as the Motion concedes (*see* Def. Br. at 1:21-22, 10:4-5), Musk had ***pre-decided*** to pursue Rule 11 sanctions, in retaliation for being sued, ***before ever seeing*** the Amended Complaint ("FAC"), the SAC, or any factual or legal argument presented by Plaintiffs in opposing the motion to dismiss.

Further, both calls were no more than general denials as typically stated in an answer. *Id.* at ¶¶32-33. At no time during either call, or at ***any*** point thereafter, did Defense Counsel ***ever*** offer up a proffer contradicting *any* alleged facts. *Id.* at ¶34. After the more robust FAC was filed (*see* Exh. 25), Defense Counsel was ***silent***. If they possess a "smoking gun" undercutting any allegation, they failed to share it. Thus, the alleged facts have gone essentially ***uncontested***. Instead, the parties' *interpretation* of those facts, and correlating duties and liabilities under applicable laws, were disputed.

Worse, Defendants actively ***impeded*** Lead Counsel's investigation by using Tesla's aggressive Non-Disclosure Agreements ("NDA"s) and related threats, both express and implied, through Defense Counsel. *Id.* at ¶35. Numerous confidential witnesses ("CW"s) cited Tesla's NDA and the fear of reprisal as reasons they either could not speak at all or could not discuss the Model S's design, crash testing,

---

[2] The two conversations were resolution-oriented; Lead Counsel understood them to be confidential under Fed. R. Evid. 408 and objects to the Motion's breach of that confidentiality. *Id.* at ¶¶32-33.

2

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

batteries and battery pack, and battery-related fires.  *Id.*; SAC ¶44.  Defense Counsel even sent Lead Counsel written "notice" seeking to restrict the investigation.  *Id.*; Exh. 2.

Nevertheless, Lead Counsel took seriously Defense Counsel's February/April 2014 outreach. Some concerns involved the initial complaint's allegations regarding Tesla's ability to meet future Model S delivery figures and timely introduce the Model X.  *See* Tuccillo Decl. at ¶32; Dkt. No. 1, ¶¶29-38. Specifically, Defense Counsel questioned certain analyst statements cited in relation to these issues.  *Id.* After further investigation, Lead Counsel walked away from these allegations (*see* Exh. 25) and voluntarily dismissed Deepak Ahuja as a defendant.  *See* Dkt. No. 34.  Thus, it is ***categorically false*** for Defendants to claim that Lead Counsel "ignored" their generalized "admonishments."

Incredibly, the Motion is based in part on a clearly frivolous argument that itself violates Rule 11: "Plaintiffs' allegations that Musk misrepresented the circumstances of the…Tennessee fire[] were frivolous."  *See* Def. Br. at 6:20-28 at n.2.  Yet, the SAC ***does not allege <u>any</u> false statements regarding the Tennessee fire***, which is pled only as a corrective event.  *See* ¶¶172-179.  As Lead Counsel alerted Defense Counsel (*see* Exh. 26), the baselessness of this argument is facially obvious, given that all SAC paragraphs cited in support concern events *predating* the Tennessee fire.

Beyond that, the Motion ignores most of the SAC's substantial, core allegations – *e.g.,* all allegations regarding failure to disclose the Mexico fire (¶¶161-171; Exhs. 23-24) and the Decisions Compromising Safety (¶¶9-11, 81-87, 91-94, 98, 100-106, 132-133, 144, 150, 159, 161, 186), most allegations regarding the Pre-Class Period Fires (¶¶7, 88-97; SAC Exhs. 1-2), and virtually all non-false statement allegations (¶¶24-112 and ¶¶192-201 excluding ¶194). *See* Exh. 4.  It entirely ignores the substantial legal precedent Plaintiffs presented to the Court in motion to dismiss arguments.  *See* Exh. 5 at iv-vii.  Instead, it cherry picks isolated, weaker allegations on the periphery of the case.  *See* Exh. 3.

Thus, there is no reason why Defense Counsel could not have served the Motion, or an antecedent "Rule 11 letter," upon seeing the FAC in April 2014, the SAC in June 2014, or Plaintiffs' motion to dismiss opposition in August 2014 – when Rule 11's mandatory "safe harbor" would have afforded the required window to withdraw any challenged text and thereby altogether avoid a sanctions motion on the Court's docket and the acrimonious briefing it engenders.

3

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

Instead, Defense Counsel *assented* to the SAC's filing. Needing leave of court to file it, Lead Counsel first sought such assent in advance, via a June 6, 2014 email attaching the initial complaint and the proposed SAC both clean and redlined against the FAC. *See* Exh. 6. Upon receipt, Defense Counsel did not raise *any* Rule 11 concerns about *any* allegation, whether newly-pled in the SAC or carry-over from the FAC, instead responding, "*We are not opposed to these amendments*." *See* Exh. 7.

Given these facts, the Motion appears driven by improper motives. The claimed defense costs are less than the price of three Model S cars – real money for an average person, to be sure, but less so for a corporation with a $25 billion market capitalization and its self-made billionaire CEO. Defendant Musk's motive was conceded – a pre-determined, retaliatory attack on Lead Counsel's reputation for having filed the lawsuit in the first place. Certainly the thought has also occurred to him to try and use an adverse ruling here to hamper Lead Counsel's prosecution of a separate securities lawsuit in which he is also named. For Defense Counsel, the Motion appeared to be a marketing campaign, highlighting its value to potential clients, at Lead Counsel's expense. They filed the Motion less than 48 hours after serving it – in clear violation of the Rule 11 "safe harbor." Just *45 minutes* later, Lead Counsel was hounded by press inquiries. *See* Tuccillo Decl. ¶36. The next day, articles with marketing-quality photos of Defense Counsel described work by the "Irell team" to recoup costs. *See, e.g.,* Exh. 9 – 11.

Thus, and for all the reasons detailed below, Defendants' Motion should be rejected.

## PROCEDURAL HISTORY

The initial complaint was filed on November 8, 2013. *See* Dkt. No. 1.

One resolution-oriented call occurred on February 10, 2014. *See* Tuccillo Decl. ¶32.

At a February 14, 2014 hearing, the Court appointed the Lead Plaintiff and Lead Counsel, instructing that the amended pleading should comply with the PSLRA by "identify[ing] the particular statements…believe[d] to be untrue and…the evidence that… demonstrates that the statements are untrue" and, regarding omissions, the "evidence…that the omission was…required and…intentionally eliminated from the disclosures" and "lay[ing] out in as much detail as can be – in your possession, because you're not entitled to discovery on this, as much information as you possibly have that supports those allegations." *See* Dkt No. 33 at 5:10-6:3.

4

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

A second resolution-oriented call occurred on April 11, 2014.  *See* Tuccillo Decl. ¶33.

On April 15, 2014, Plaintiffs filed their notice of voluntary dismissal of Defendant Ahuja (Dkt. No. 34) and, in accordance with the Court's instructions, their FAC (Dkt. No. 35).

On June 6, 2014, Lead Counsel sought Defense Counsel's assent to file the SAC.  *See* Exh. 6. The SAC mirrored the FAC, save for some administrative changes (*see* Dkt. No. 39 at 3:17-28 and 4:1-6) and minor tweaks to ¶172 to preserve a stock drop.  *Id.* at 4:7-17; Exh. 8 at 58:21-59:2.

On June 7, 2014, Defense Counsel *assented* to the SAC's filing.  *See* Exh. 7.

On June 11, 2014, Plaintiffs moved for leave to file the SAC (*see* Dkt. No. 39), which was granted on June 16, 2014 (Dkt. No. 41).  They filed the SAC that day (Dkt. No. 42).

Defendants filed their motion to dismiss and memorandum (Dkt. No. 43) ("MTD Br.") and their motion (Dkt. No. 44) seeking judicial notice of many materials outside the SAC on June 16, 2014.

On August 7, 2014, Plaintiffs fled their opposition (Docket No. 45) (the "MTD Opp.") with their own, more limited request for judicial notice (Docket No. 47) ("MTD Opp. RJN").

On August 29, 2014, Defendants filed their reply brief (Docket No. 50) ("MTD Reply") and a response to Plaintiffs' MTD Opp. RJN (Docket No. 51).

On September 26, 2014, the Court heard oral argument (Docket No. 53) and issued its bench ruling of dismissal.  On December 5, 2014, it entered the written Memorandum of Opinion (Docket No. 56) (the "MTD Order") and Judgment (Docket No. 58) (the "MTD Judgment"), neither of which articulated any violations of Rule 11 by Plaintiffs or Lead Counsel.

On December 16, 2014, at nearly 9:00 p.m. New York time, Defense Counsel first served a copy of the Motion and requested a meet and confer, which Lead Counsel saw the next day.

Starting December 17, 2014, Lead Counsel unsuccessfully engaged Defense Counsel in a confidential dialogue under Fed. R. Evid. 408 to resolve the Motion without burdening the Court.

Defense Counsel filed the Motion at 4:45 p.m. on December 18, 2014.

On December 19, 2014, Lead Counsel filed a Notice of Appeal (Docket No. 60).

On January 9, 2015, Plaintiffs filed a Ninth Circuit Mediation Questionnaire (*Acar, et al. v. Tesla Motors, Inc., et al.*, No. 14-17501, Docket No. 2), describing the merits and Rule 11 issues and expressing

5
Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

willingness to mediate both of them with the Ninth Circuit's Mediator.  *See* Exh. 9.

Despite Plaintiffs' ongoing willingness to mediate, no mediation has been scheduled.

The appeal is currently stayed until June 30, 2015.  *See* Dkt. No. 69.

### PLAINTIFFS' COUNSEL'S CONDUCT

Lead Counsel is one of the oldest, most-respected securities litigation firms in the U.S., founded in 1936 by Abraham L. Pomerantz, a securities litigation pioneer.  *See* Exh. 13.  It has recovered over $1 billion for investors.  *See* Exh. 14.  It staffed this litigation with skilled attorneys, Partner Matthew L. Tuccillo and Senior Partner Jeremy Lieberman.  *See* Exh. 13 at 13-14, 18-19; Exh. 15.  Neither they nor Pomerantz has ever been sanctioned under Rule 11.  *See* Tuccillo Decl. ¶30; Lieberman Decl.  ¶4. [3]

<u>Pre-SAC Investigation</u>.  Lead Counsel has conducted a costly, thorough, and ongoing investigation, devoting over $⬛⬛⬛ in time and incurring over $⬛⬛⬛ in out-of-pocket expenses investigating and prosecuting this action through the motion to dismiss.  Tuccillo Decl. ¶31.  It included, *inter alia*, interviews of CWs; review of the Defendants' public documents, conference calls and announcements made by Defendants; review of U.S. Securities and Exchange Commission filings, wire and press releases published by and regarding Tesla; analysts' reports and advisories about Tesla; press coverage regarding Tesla; Tesla's stock chart; and other pertinent information readily obtainable on the Internet."  SAC at 1:2-14.  Lead Counsel exhaustively reviewed materials from Bloomberg, Yahoo! Finance, the SEC's Edgar website, Tesla's corporate website, and other sources.  Tuccillo Decl. ¶38.  Plaintiffs also expressly pled their reasonable belief that substantial evidentiary support would exist for their allegations after a reasonable opportunity for discovery.  *Id.* ¶39; SAC at 1:15-16.

Lead Counsel spent over $⬛⬛ on a private investigator, who identified and contacted potential witnesses in the U.S. and abroad, and who assisted in procuring certain documents.  *See* Tuccillo Decl. at ¶31.  This work, supplemented by Lead Counsel's own efforts, resulted in identification of fire department reports (SAC Exhs. 1-2) and statements by 14 CWs in the FAC and SAC, including, *inter*

---

[3]  Lead Counsel asked Liaison Counsel Glancy Binkow & Goldberg LLP ("Glancy"), an accomplished plaintiff-side securities litigation firm in its own right, to fill a traditional local counsel role, opining on matters of local rules and procedures, etc.  *See* Tuccillo Decl. ¶37; Declaration of Lionel Glancy.  Thus, Plaintiffs respectfully request that the Motion be denied as to Glancy.

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

*alia*, Tesla's former Director of Vehicle and Chassis Engineering (CW1), Tesla engineers including one who worked on Model S crashworthiness and crash test results analysis (CW2, CW3, CW4), a Tesla designer who edited engineer computer models and made production drawings of the Model S battery pack (CW5), and the purchaser of the Model S in the Mexico fire (CW14). *Id. See* SAC ¶¶8-10, 13, 29-43, 57-64, 66-73, 75-87, 89-91, 94-96, 99, 101-104, 106, 111, 169-170, 188, 193.

Lead Counsel spent roughly $ ████████████████████████████████████████████████

████████████████████████████████████████████████████████. *See* Tuccillo Decl.

¶31. ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

*Id.* ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ *Id.*

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ *Id.*

Lead Counsel received other unsolicited tips supporting the allegations, but in often omitted them from the SAC, due to various concerns identified after investigation. *Id.* ¶40. For example:

• Lead Counsel received an anonymous, encrypted email just after the Class Period fire in Tennessee from what appeared to be a Tesla engineer. *Id.* at ¶41; Exh. 16. It stated:

> This was not our third fire today. It was our fourth fire. The first happened last spring 2012 when one of our first builds spontaneously went into thermal runaway. It set off the sprinklers and the local fire department had to respond to put it out.
>
> Our former chief engineer on model s, Peter rawlinson, resigned because he was worried about the safety of the battery enclosure. We did a crash program to redesign but didn'g [sic] have enough time for testing. Elon made the call on the thickness of the battery enclosure. He was mainly concerned about vehicle weight and range (obviously interrelated) so he wouldn't accept our recommendation to make the enclosure thicker.
>
> Battery enclosure is made up of multiple alloys ie steel to prevent penetration and aluminum for heat (fire). Elon made the call on that as well using his gut instead of testing.
>
> We wanted more room in the enclosure and more margin at the edges but Elon wouldn't allow because he had promised a car with 300 mile range so we had to pack the cells in.
>
> Any deformation of a cell will almost always lead to a thermal event which is why the bottom of the car was always a risky design choice particularly with the enclosure design.

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

> We have a test facility in the Nevada desert that no one knows about where we can test battery fires without being detected.
>
> There will be more fires.

Unable to crack the encryption, Lead Counsel and its investigator replied, expressing a desire to speak but asking if the sender was a current Tesla employee. *Id.* Neither received any response. *Id.* While the message corroborated many SAC allegations (*e.g.*, ¶¶9-10, 81-87, 96, 104, 106), Lead Counsel decided its anonymity and risk that a current employee sent it weighed against inclusion. *Id.*

• Lead Counsel received an unsolicited email from a third party ("CWX") who sought legal advice during a confidential dialogue with Lead Counsel. *See* Tuccillo Decl. ¶42. ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ *Id.* ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ *Id.*

████████████████████████████████████████████████████████████ *Id.*

• Lead Counsel received an unsolicited email, appending Model S accident photos, from an analyst challenging Tesla's "safest car in America" claim, stating the Model S: (i) caused two fatalities in a Honda Civic it struck, due to dangers posed to other cars by its weight and (ii) sheds wheels in accidents, making it uncontrollable, more likely to suffer battery damage, and a fire risk. *Id.* ¶43. While supportive of SAC ¶124, Lead Counsel had concerns and discredited the statements. *Id.*

<u>Post-SAC Investigation</u>.   Lead Counsel's continuing investigation has unearthed more corroborative facts, including supplemental CWs ("SUPPCW") which Plaintiffs would have included in an amended pleading and which verify the SAC's claims were not baseless.  For example:

(1) SUPPCW15 is a former Tesla Shock/Vibration/Durability Lead Engineer who did durability tests on batteries and battery modules. *Id.* ¶44. Corroborating SAC ¶¶6-10, 59, 69-70, 73-78, 81-87, 91-

8

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

96, 100-106, 120, 124, 132-133, 144, 150, 159, 161, 186, 188, SUPPCW15: (i) said Tesla failed to do proper durability testing on the first 1,000 Model S cars produced, making them a safety hazard; (ii) participated in mid-2012 meetings where the battery pack team manager disagreed with the decision to put the battery pack into production as then-designed, due to structural flaws; (iii) said Tesla engineers were concerned the battery pack was not strong enough, but were constrained by drag, weight, and mileage concerns; (iv) said engineers voiced "strong opposition" and "were concerned about safety," but Musk "brushed it off and went into production"; (v) recalled a battery fire in late 2011/early 2012; (vi) said all fires were reported to an Environmental, Health & Safety Department. *Id.*

(2) SUPPCW16, a former Tesla Associate Manager, Engineering CNC, said the Model S battery pack design would have been finalized about six months pre-production, due to the design steps involved and the fact that it was a structural component, such that any changes would have required resubmission to the NHTSC for new crash testing. *See* Tuccillo Decl. ¶45. CW16 corroborates Plaintiffs' argument that the Model S battery pack was essentially unchanged between the December 19, 2011 fire (SAC ¶¶92-94) and delivery of Model S cars to customers in June 2012 (SAC ¶4). *See* MTD Opp. at 11:1-4, 14:15-18, 15:19-21, 29:5-6. This is critical, given that Defendants argued that the December 19, 2011 fire was irrelevant due to later battery changes (*see, e.g.*, MTD Reply at 2:3-3:11), and the Court relied on this reasoning in its dismissal rulings (*see, e.g.,* MTD Order at 10:22-11:14).

(3) SUPPCW 17, a former Tesla Production Associate, stated that after the Class Period fires, Tesla asked owners to come in for system updates or routine checks, only to have a rework team do undisclosed battery pack change-outs, which he saw as Tesla trying to avoid an official recall. *Id.* ¶46. CW17 corroborates SAC ¶¶17, 61-62, 153, 193-194.

(4) The Insurance Institute for Highway Safety completed a study of 2009-2012 driver deaths and found that *nine* 2011 models, including ones by Mercedes-Benz and Audi, had zero deaths. *Id.* ¶20; Exh. 17. These statements corroborate SAC ¶¶124, which specifically references these automakers, as to why Tesla was not the "Safest Car in America."

(5) Congress issued a scathing report on NHTSA's chronic, "inexcusable" failure to identify and explore potential car defects. *See* Exhs. 18-20; Tuccillo Decl. at ¶21-23. NHTSA's staff was "blinded

9

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

by outdated perceptions" and the "chasm" in its understanding of advanced technologies. *See* Exh. 20 at 32-33. Its investigation unit is overwhelmed, receiving just 1% of the agency's budget and 50 staff members to oversee 200 million U.S. vehicles, including ones it is ill-equipped to grasp. *See* Exh. 18 at 3. Nearly all recalls are done by automakers voluntarily, with some "influenced" by NHTSA defect probes. *Id.* These facts corroborate SAC ¶¶17, 99, 108-111, 152-153, 163, 177-178, 187-189, 192-200, and the arguments that Defendants' remedial measures were tantamount to a recall (*id.* ¶¶107, 194) and that NHTSA's closing of its investigation "does *not* constitute a finding by NHTSA that a safety-related defect does not exist" (NHTSA's words) meant just that (*id.* ¶¶17, 200).

## DEFENSE COUNSEL'S CONDUCT

Defense Counsel's conduct in pursuing the Motion evidences its improper purposes under Rule 11, requiring its rejection. Specifically:

Violation of Confidentiality. The February 10, 2014 and April 11, 2014 teleconferences, both *predating* the FAC, were resolution-oriented talks, which Lead Counsel viewed as confidential under Fed. R. Evid. 408.[4] *See* Tuccillo Decl. ¶32. It is highly objectionable for Defense Counsel to have discussed their contents as part of the instant Motion. *See* Def. Br. at 1:18-22, 9:26-10:5.

Pre-Determination to Pursue Rule 11 Remedies. Contrary to Defense Counsel's suggestions otherwise, both of those calls amounted to no more than general denials of the initial complaint allegations, akin to those stated in an answer. *Id.* ¶32. Defense Counsel otherwise indicated there is no insurance and threatened that Musk is a "big personality" who "will view things personally" and "will carry through remedies to the end." *Id.* Thus, the Motion concedes (*see* Def. Br. at 1:21-22, 10:4-5), Musk had pre-determined to pursue Rule 11 remedies ***before ever having seen*** the extensive allegations in the FAC and the SAC or ***any of Plaintiffs' legal arguments*** in their MTD Opp. Such a reactionary, retaliatory decision is an improper purpose under Rule 11. *Roberts v. Peat, Marwick, Mitchell & Co.*,

---

[4] Fed. R. Evid. 408(a) states that "Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity…of a disputed claim…: (2) conduct or a statement made during compromise negotiations about the claim." The 2006 amendment notes explain: "Rule 408 excludes compromise evidence even when a party seeks to admit its own…statements made in settlement negotiations. … The protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury."

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

857 F.2d 646, 654 (9th Cir. 1988)(Rule 11 "should not itself become a retaliatory device").

Before the April 11, 2014 call, Lead Counsel had filed a separate, unrelated action against another of Defendant Musk's companies, SolarCity (*see Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF (N.D. Cal.), Dkt. No. 1 (filed March 28, 2014)), in which it was appointed PSLRA lead counsel (*id.*, Dkt. No. 51) and filed an amended complaint naming Musk (*id.*, Dkt. No. 56). *See* Tuccillo Decl. ¶¶24, 47; Exh. 21.  No doubt, it dawned on Musk to try to use an adverse Rule 11 here to undermine Lead Counsel's role in that separate case.  However, this, too, is an improper purpose under Rule 11.

<u>Mischaracterizations In The Motion</u>.  Defense Counsel misleadingly characterized the April 11, 2014 call as occurring "shortly before filing their motion to dismiss" (*see* Def. Br. at 10:1-2), creating the misimpression that it *followed* Plaintiffs' FAC, as a last-minute discussion of an about-to-be-filed motion.  Not so.  The call occurred four days **before** the FAC was filed and ***months before*** Defendants moved to dismiss on June 16, 2014.  Defense Counsel's blurring of that date cannot be justified and itself violates Rule 11.  Indeed, when Lead Counsel pressed for the actual date, Defense Counsel's reply (less than 15 minutes later) was April 11, 2014 (which matched Lead Counsel's understanding).  *See* Exh. 22; Tuccillo Decl. ¶¶25.  This timeline is critical, because Lead Counsel substantially revised the pleadings in the FAC, as is clear in a "redline" against the initial complaint.  *See* Exh. 25.

Defense Counsel also argues that Plaintiffs failed to reconsider any allegations after the February 10 and April 11, 2014 calls.  *See* Def. Br. at 9-10.  This is ***categorically false***.  During the February 10, 2014 call, Defense Counsel expressed concerns over allegations in the initial complaint regarding Tesla's ability to meet future production targets, including by questioning certain analyst statements cited regarding these issues.  *Id.* ¶32; Dkt. No. 1, ¶¶29-38.  After further investigation, Lead Counsel opted to not pursue these allegations, which were not pled in the FAC (*see* Exh. 25), and to voluntarily dismiss Deepak Ahuja as a defendant.  *Id.*; Dkt. No. 34.  Thereafter, Defense Counsel ***never raised another concern***, despite the large scale of new allegations in the FAC.  *See* Exh. 25.

<u>Assent and Non-Opposition To The Pleading At Issue</u>.  The Motion also creates the misimpression that Lead Counsel ignored some piece of evidence brought to their attention.  Not true.  At no point during either call – or at ***any*** point after, including after seeing the FAC, the SAC, and

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

Plaintiffs' MTD Opp. – did Defense Counsel *ever* make a proffer of any kind to directly refute *any* factual allegation. *Id*. ¶34. If a "smoking gun" refuting the allegations exists, Lead Counsel was never informed of it. *Id.* Indeed, Defense Counsel **assented** to the SAC's filing, when Lead Counsel required leave to file it, and stated, "***We are not opposed to these amendments***." *See* Exhs. 6-8. Defendants cite **no cases** where the party seeking Rule 11 sanctions for purportedly "baseless" allegations so acted.[5]

      <u>Baseless Arguments in the Motion</u>. Defense Counsel employed frivolous arguments in seeking sanctions: "Plaintiffs' allegations that Musk misrepresented the circumstances of the…Tennessee fire[] were frivolous." *See* Def. Br. at 6:20-28 at n.2. The SAC **does not plead <u>any false statements regarding the Tennessee fire</u>**, which is pled solely as a corrective event. *See* ¶¶172-179. This is facially obvious from the SAC; the paragraph Defendants cite (¶¶145-149, 156-157, 160-161) *all* concern events **predating** the Tennessee fire. Thus, Defense Counsel committed the *same* purported misconduct – misstated chronology,[6] ignored contradictions with SAC's allegations – now urged as a basis for *sanctions* against Lead Counsel. *See also* conduct described in n.14, *infra*. Lead Counsel notified Defense Counsel of these issues, to no avail. *See* Exh. 26; Tuccillo Decl. ¶29.

      <u>Impeding Lead Counsel's Investigation</u>. The Motion, throughout, attacks Lead Counsel for a purported failure to "reasonably and competently investigate" the facts. Omitted *entirely* is a candid admission that Defense Counsel has ***actively impeded*** Lead Counsel's investigation. Thus,

> Numerous CWs stated that they were unable to disclose additional relevant information to Lead Plaintiff, in whole or in part, due to the terms of a Non-Disclosure Agreement ("NDA") and concerns at the steps Tesla would take if they responded truthfully to Lead Plaintiff's questions. Such NDAs, and Tesla's *in terrorem* use thereof, whether express or implied, have thus far posed an obstacle to Lead Plaintiff's conducting a fulsome investigation into the factual circumstances giving rise to the instant action and the securities fraud alleged herein.

---

[5] Thus, Defendants' two cited cases regarding their purported "admonishments" (*see* Def. Br. at 10:26-11:7) are utterly distinguishable. *See Burekovitch v. Hertz*, No. 01-cv-1277 (ILG), 2001 WL 984942, at *13 (E.D.N.Y. July 24, 2001)(after defendants moved to dismiss fraud claim as barred by SLUSA, plaintiff sought to pursue a breach of fiduciary duty claim also barred by SLUSA); *Polar Intern. Brokerage Corp. v. Reeve*, 196 F.R.D. 13 (S.D.N.Y. 2000)(plaintiffs continued to pursue a frivolous claim after the court had provided a ***written decision*** highlighting its deficiencies).

[6] They also argue that **after** the Court's MTD Order, "Plaintiffs nevertheless pressed their claims" through an unreasonable and incompetent investigation (*see* Def. Br. at v:8-18).

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

SAC (at ¶44).  Defense Counsel sent Lead Counsel a threatening email, stating it was "monitoring and investigating" its investigator's work, implying that certain former employees were not to be contacted, and seeking to enforce NDA and trade secret confidentiality.  *See* Tuccillo Decl. ¶¶5, 35; Exh. 2. When Lead Counsel asked for specific instances of concern, Defense Counsel ***never responded***.  *Id.*

These tactics had a significant, damaging effect on Lead Counsel's investigation. *Id.* Many CWs cited in the SAC raised such concerns in refusing to speak about certain topics: (a)  CW4 confirmed that Tesla conducted its own road debris tests on the Model S battery pack, but would not comment on them, citing the Tesla NDA; (b) CW7 refused to discuss final designs of the Model S battery pack and its undercarriage, citing the Tesla NDA; (c) CW8 expressed a concern about Tesla's General Counsel "coming after" CW8 for speaking with Lead Counsel's investigator; (d) CW10 declined comment on whether battery packs caught fire due to penetration during internal Tesla tests, citing the Tesla NDA; and (e) CW12 cited Tesla's NDA and a fear that Tesla would "come after" CW12 as reasons why CW12 could not provide more detail as to how Musk pushed Tesla to address fire issues (SAC ¶193) and could not discuss Tesla's management, manufacturing, and production ramp up problems.  *Id.*

In addition, numerous other potential CWs raised similar concerns (Tuccillo Decl. ¶35):

•  A former Tesla Validation Test Manager, Battery Technologies, said that Tesla's internal validation testing differed from external third party testing released to the public, but, citing the Tesla NDA, declined to describe the design specs, to identify the third party testers, to say if the testing results differed, or to comment on pre-Class Period battery fires, on a Tesla testing facility in the desert, or on whether Musk and executives disagreed with engineers over the thickness of the battery cover;

•  Many other former Tesla employees refused to speak altogether, citing the Tesla NDA, including:  (i) a Mechanical Engineer, Battery Systems & Powertrain, (ii) a Manufacturing Engineer, Project Manager, (iii) an Engineering Manager; and (iv) a Lead Engineer.

Defendants have ***not cited a single case*** where the party moving for Rule 11 sanctions for a purportedly deficient investigation ***actively impeded that very same investigation***.  To Lead Counsel's

13

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

knowledge, no such precedent exists, as conduct of this sort is accepted grounds to **reject** sanctions.[7]

Marketing Based on the Motion.   Within 45 minutes of the Motion's filing, on a closed docket, Lead Counsel was hounded by press inquiries.  *See* Tuccillo Decl. ¶36.  By the next day, numerous pieces ran detailing the accusations against Lead Counsel, some with professional, marketing-quality photos of Defense Counsel.  *See, e.g.,* Exhs. 9-11.  It had the look and feel of a marketing campaign.

## ARGUMENT

### I.   Applicable Legal Standards

#### A.   Rule 11 Is An Extraordinary Remedy With Mandatory Prerequisites

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."  *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)).   Rule 11 sanctions apply when counsel presents "claims…and other legal contentions… [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]"  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting Rule 11(b)(2)).   "Where, as here, a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the **complaint** is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a **reasonable and competent inquiry** before signing and filing it."  *Id.* (emphasis added) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).   The Ninth Circuit "use[s] the word 'frivolous' 'to denote a filing that is **both** baseless **and** made without a reasonable and competent inquiry.  *Id.* (emphasis original) (quoting *In re Keegan*, 78 F.3d at 434).[8]

Given the gravity of its penalties, Rule 11 imposes a **mandatory** 21-day "safe harbor" period within which the non-moving party *must* be afforded an opportunity to escape sanctions:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under

---

[7]  *See, e.g., Bredehoft v. Alexander*, 686 A.2d 586, 591, 593 (D.C. 1996)(reversing sanctions as clearly erroneous where plaintiff had interviewed a dozen witnesses, but defendants had no prefiling duty to disclose, had control over pertinent documents and witnesses, and frustrated plaintiffs' attempts to interview more witnesses by alleging ethical violations and threatening action to restrain such contacts).
[8]  The Motion does not accuse Plaintiffs or Lead Counsel of any purported violation of Rule 11(b)(1), *i.e.*, pursuit of the litigation for some improper purpose – nor could it.

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, … [or] contention… is withdrawn or appropriately corrected within 21 days after service…..

Fed. R. Civ. P. 11(c)(2).  Service *after* a complaint is dismissed is improper.  *See Barber v. Miller*, 146 F.3d 707, 710-711 (9th Cir. 1998) (reversing sanctions and stating, "The purpose of the safe harbor…is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions*."  A motion served after the complaint had been dismissed did not give [non-moving party] that opportunity.") (emphasis original).

## B.    The PSLRA Sets A High Sanctions Threshhold And Mandatory Protections

The PSLRA also sets a very high bar for imposition of sanctions, along with explicit protections for any party facing them.  Prior to making any finding that a party or attorney violated any part of Rule 11, a court must give such party or attorney notice and an opportunity to respond.  15 U.S.C. 78u-4(c)(2).  It also limits any presumptive award of fees to instances of a "***substantial*** failure of any ***complaint*** to comply with any requirement of Rule 11(b)."  15 U.S.C. 78u-4(c)(3)(A)(ii) (emphasis added).  Even if that high threshold is met, the PSLRA still permits the party facing sanctions to rebut by showing either that the proposed fee and expense award "will impose an unreasonable burden…and would be unjust" or that the Rule 11 violation was *de minimus*.  15 U.S.C. 78u-4(c)(3)(B)(i)-(ii).[9]

Significantly, in the Ninth Circuit, the Rule 11 "safe harbor" has not been held to have been obviated by the PSLRA.  *See, e.g.*, *Kelter v. Associated Fin. Group, Inc.*, 382 Fed. Appx. 632, 633 (9th Cir. 2010)(declining to overturn district court denial of motion for fees under PSRLA based in part on failure to comply with Rule 11 "safe harbor" where motion was filed after grant of summary judgment but not served 21 days pre-filing); *Lowery v. Blue Steel Releasing, Inc.*, 261 Fed. Appx. 17, 20 (9th Cir.

---

[9] Contrary to the Motion (*see* Def. Br. at 1 n.1), so-called Rule 59(e) motions seeking sanctions – in reality, Rule 11 motions creatively captioned – are not a "well-established" procedure for seeking post-judgment sanctions under the PSLRA.  Moreover, both their cited cases *refused* to grant sanctions.  *See Richter v. Achs*, 174 F.R.D. 316, 319 (S.D.N.Y. 1997)(refusing to alter the judgment to impose sanctions where "[t]hough plaintiff's arguments were unconvincing, they were not entirely frivolous"); *DeMarco v. Depotech Corp.*, 131 F. Supp. 2d 1185, 1188 (S.D. Cal. 2001)(rejecting request to amend judgment to impose sanctions where "[e]ven though plaintiffs' pleadings ultimately failed to survive the PSLRA's heightened pleading requirements, they nonetheless established a nonfrivolous suspicion of fraud" and "[p]laintiffs initiated this action for the purpose of correcting what they reasonably, though erroneously, perceived to be a legally redressable harm under federal securities law").

15

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

2007) (affirming denial of sanctions motion where movant failed to comply with Rule 11 "safe harbor" and where PSLRA analysis likewise did not support them) *Great Dynasty Int'l Fin. Holdings Ltd. v. Li*, No. C-13-1734 EMC, 2014 WL 3381416, at *6 (N.D. Cal. July 10, 2014) (denying sanctions under both Rule 11 for failure to comply with the "safe harbor" and the PSLRA).[10]

## II.   The Court Should Not Find Any Violation Of Rule 11

### A.   Defendants Failed To Comply With The Rule 11 "Safe Harbor"

As detailed *supra* at 2:11-24, 11:12-12:9, the February 10 and April 11, 2014 calls both predated the FAC's extensive amendments and conveyed only general denials.  At *no point* did Defense Counsel *ever* raise *any* Rule 11 concern.  They did not: (i) send a Rule 11 letter, (ii) withhold assent to the SAC's filing due to Rule 11 concerns, (iii) condition their assent to file the SAC on removal of any allegations due to Rule 11 concerns, or (iv) timely serve a motion as required by Rule 11(c)(2).[11]  Instead, Defense Counsel *assented* to the SAC's filing, stating, "*We are not opposed to these amendments*."  *See* Exh. 7. They then litigated onward, incurring the legal expenses they now seek to recover, while depriving Lead Counsel of the mandatory "safe harbor" to avoid sanctions.[12]

To impose sanctions in these circumstances would run afoul of Rule 11(c)(2)'s "safe harbor" provision and would be unjust and impose an unreasonable burden on Lead Counsel (with no greater burden on Defendants absent sanctions) under 15 U.S.C. 78u-4(c)(3)(B)(i)-(ii).  *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009) ("Failure to provide the required notice precludes an award of Rule 11 sanctions….") (citing *Barber*, 146 F.3d at 710 ("[a]n award of [Rule 11] sanctions cannot be upheld" where party seeking sanctions did not provide 21-day notice period));

---

[10] *But see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (PSLRA sanctions provision forecloses the kind of safe harbor afforded in Rule 11(c)(2)).

[11]   Defense Counsel could have taken any or all of these steps after the FAC was filed (April 15, 2015), when Lead Counsel sought leave to file the SAC (June 6, 2014), after the SAC was filed (June 15, 2014), before or contemporaneous with the MTD's filing (June 15, 2014), after Plaintiffs' filed their MTD Opp. (August 7, 2014), before the MTD hearing (September 26, 2014), or before the Court entered its MTD Order and MTD Judgment (December 5, 2014).  They failed to do so.

[12]   For these reasons, the extra-jurisdictional cases cited in the Motion at 10:27-11:7 (*Burekovitch v. Hertz*, No. 01-CV-1277 (ILG), 2001 WL 984942 (E.D.N.Y. July 24, 2001) and *Polar Intern. Brokerage Corp. v. Reeve*, 196 F.R.D. 13 (S.D.N.Y. 2000)) are entirely distinguishable.

16

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

*Holgate*, 425 F.3d at 678-679 (affirming sanctions award for movants who complied with the "safe harbor" while reversing sanctions award for movant who did not comply with it).[13]

### B.    The SAC And Its Claims Readily Pass Rule 11 Scrutiny Based On Its Core Allegations And Plaintiffs' Related MTD Arguments

Defendants seek sanctions based on isolated, cherry-picked peripheral allegations.  In doing so, they ignore the clearly non-frivolous (though ultimately unsuccessful) nature of the SAC's core, which will form the backbone of Plaintiffs' pending appeal.  Those core aspects include:

SAC's Non-False Statement Allegations.  Significantly, the Motion raises no Rule 11 concerns about the vast majority of the SAC, including, *inter alia*, the *entirety* of its party (¶¶24-27), non-party (¶28), CW (¶¶29-44), scienter (¶¶213-219), and all pre-Class Period (¶¶45-112) and all but one post-Class Period (¶¶192-201 excluding ¶194) substantive allegations.  *See* Exh. 4.  Indeed, the Motion assumes the *accuracy* of these allegations, arguing that Lead Counsel failed to recognize a conflict between them and isolated false statement allegations.  Defendants have thus waived any argument that these parts of the SAC violated Rule 11.  *See Avila v. Los Angeles Police Dept.*, No. 12-55931, 2014 WL 3361123, at *3 (9th Cir. Feb. 6, 2014); *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009).

Failure to Disclose the Mexico Fire.  The Motion is also ***silent*** on this centerpiece allegation.  The SAC pled *uncontested* facts evidencing: (a) Defendants' immediate knowledge of a Model S fire in Yucatan, Mexico on October 18, 2013, including statements by multiple CWs (including the car's purchaser) (¶¶169-170), a Tesla spokesperson (¶167), and Musk's public admission of knowledge "the next day" (¶171); (b) Tesla's investigation concluded on or by October 22, 2013 (¶169); (c) Musk failed to disclose this fire in public statements on October 22 and 24, 2013 about an earlier Washington fire (¶¶160-161, 164; *see also* Exhs. 23-24); and (d) the Mexico fire was widely reported on October 28,

---

[13] *See also Universal Trading & Inv. Co. v. Dugsbery, Inc.*, No. C 08-03632 CRB, 2011 WL 1302255, at *5 (N.D. Cal. Apr. 5, 2011) ("Leaving aside the merits of Defendants'… sanctions motion, Defendants failed to comply with the safe-harbor provisions in Rule 11(c)(2), so the motion must be denied."); *McMahon v. Best*, No. C-00-00616 CRB, 2000 WL 1071828, at *7-*8 (N.D. Cal. July 21, 2000) (court "must reject" sanctions motion not served 21 days before filing); *Kotakis v. Gruntal & Co.*, No. C 97-0202 CRB, 2000 WL 1006541, at *7 (N.D. Cal. July 11, 2000) ("Subsection (c)(1)(A) of Rule 11 provides that, before filing a Rule 11 motion… a party must serve [it] on the offending party and permit that party 21 days to withdraw or correct his offending submission. … Because of this failure to comply with the mandated procedures, the Court denies defendants' motion.").

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

2013, causing a 4.3% single-day drop in Tesla's stock price (¶¶165-166).[14]  The only dispute was a legal one – whether Musk had a duty to disclose the Mexico fire, in discussing the Washington fire.[15]  Plaintiffs cited extensive case law in support of such a duty.  *See* MTD Opp. at 19:9-13 (citing *Matrixx Initiatives, Inc. v. Siracusana*, 131 S. Ct. 1309, 1318-1323 (2011); *Berson v. Applied Signal Tech.*, 527 F.3d 982, 987 (9th Cir. 2008); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992)).[16]  All the foregoing unquestionably satisfy Rule 11, as Defendants apparently concede.  *See, e.g., Avila*, 2014 WL 3361123, at *3.

<u>Failure to Disclose the Decisions Compromising Safety</u> (Def. Br. at 5:21-28).  The SAC pled *uncontested* facts, citing multiple CWs, evidencing: (a) Musk ordered a 300 mile-per-charge ("MPC") range for the Model S (¶¶9, 81-82, 100); (b) Musk and Telsa engineers decided to use higher-energy Panasonic batteries to reach it (¶85); (d) Defendants knew those batteries were more volatile (¶¶84, 87, 98) and caused more violent fires if ignited (*e.g.*, 91-94); (e) Musk and Tesla engineers balanced safety against the 300 MPC range (¶¶85-87); (f) in doing so, they decided to end use of battery protective sleeves (¶101), preserve the existing battery pack configuration (¶¶83, 102), not use available, patented, stronger undercarriage shielding (to reduce weight) (¶¶103-105), and program the Model S to lower at highway speeds (to reduce drag) (¶106) (together, the "Decisions Compromising Safety" in Plaintiffs' MTD Opp.); (g) these decisions rendered the Model S more vulnerable to catastrophic damage from a road debris puncture of the undercarriage that could cause a hard-to-extinguish, high-intensity battery fire

---

[14]  In response, Defendants argued that Musk did not know of the Mexico fire (MTD Br. at 11:22-27), had no duty to discuss it because it was so different from the Washington fire (*id.* at 12:1-20), and, for the first time in their reply brief, that he was entitled to investigate the Mexico fire before disclosing it (MTD Reply at 10:4-11).  The first of these arguments ***ignored clear and uncontested allegations to the contrary found elsewhere in the SAC***, *i.e.* Musk's admission of knowledge (¶171) and his control over Tesla (*e.g.*, ¶¶3, 45, 56, 74-87, 100) which sent a team the next day.  Thus, Defense Counsel committed the ***same purported misdeed*** as they say gives rise to a Rule 11 violation.

[15]  Musk's remarks included an exchange with a reporter on October 24, 2013:  When asked why Martin Winkerkorn (VW Management Board Chair; Audi and Porsche Supervisory Board Chair) said he was "startled" by the Washington fire (*see* Exh. 24 at 2:15-20), Musk referenced the number of vehicle fires in VW's cars and said, "I'm not sure why he'd be startled by ***one*** in an electric car" (*id.* at 3:4-5).

[16]  The Court's dismissal was based on a portion of *Brody* rejecting liability for "incomplete" statements and on a truth-on-the-market defense, not briefed by the parties, hinging largely on a Youtube video's page views as of October 29, 2013 – the day after the Mexico fire was widely reported.  *See* MTD Order at 15:1-16:1.  Plaintiffs respectfully disagree with this ruling and intend to appeal.

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

(¶10); and (h) these decisions were not disclosed to investors (¶¶11, 120, 124, 132-133, 144, 150, 159, 161, 186). SUPPCW15 strongly corroborates these allegations. *See supra* at 9:2-12. Plaintiffs cited extensive case law for a duty to disclose. *See* MTD Opp. at 11:12-21 and n.6 at 11:24-28 and 12:20-21 (citing *Matrixx*, 131 S. Ct. at 1318-1323; *Berson*, 527 F.3d at 987; *Brody*, 280 F.3d at 1006; *Hanon*, 976 F.2d at 504; and *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1052 (9th Cir. 2008)). They argued the Washington and Tennessee fires, as corrective events, manifested the *exact* risks posed by the Decisions Compromising Safety. *See, e.g., id.* at 2:4-6. Plaintiffs also noted that Defendants waived any argument in favor of dismissal by not including it in their opening brief. *See* MTD Opp. at 10:10-12 and n.4 at 10:26-28 (citing *Avila*, 2014 WL 3361123 at *3 and *McKay*, 558 F.3d at 891 n.5) and at 12:12-16.[17] Thus, the argument that these allegations violated Rule 11 (*see* Def. Br. at 5:21-27) fails.

Failure to Disclose the Pre-Class Period Fires (Def. Br. at 6:1-18). The SAC, citing multiple CWs, pled *uncontested* facts evidencing: (a) at least three specific pre-Class Period fires (¶¶7, 90-94, 96) and "more cases of strong fires as time went on" (¶95);[18] (b) one of the fires was during a December 19, 2011 test by engineers at Tesla's factory on a fully-installed Model S battery pack (¶¶91-93); (c) the test spun out of control, destroying the car and requiring 23 first responders (*id.*); (d) the Fire Department's Incident Report (SAC Exh. 1, likewise uncontested) described the incident as a "***crash fire test***" where "***failure of equipment*** or heat source caused the ignition" (*id.*); (d) these fires alerted Defendants to an increased risk of high-intensity, hard-to-extinguish Model S battery fires capable of catastrophic damage (¶88); and (e) both the *existence* and the *intensity* of these fires were not disclosed to investors (¶97). It pled that these facts rendered certain statements false or misleading. *See, e.g.,* ¶¶7, 130 ("Throughout all our ***crash tests***…never once has there been a fire," which is contradicted by the Fire Department report); ¶119 ("The Model S lithium-ion battery did not catch fire ***at any time before***, during, or after NHTSA

---

[17] The Court's dismissal was premised on the rationale that Plaintiffs engaged in second-guessing and the undisclosed decisions were irrelevant to a securities fraud claim. *See* MTD Order at 17:2-10. Plaintiffs respectfully disagree with this ruling and intend to appeal.

[18] Defendants did not dispute that two other fires occurred, only whether they involved Model S batteries. *See* MTD Reply at 3:16-20. The SAC sets forth the factual bases, including CWs and an uncontested Fire Department report, as to why they did (¶¶90, 96;SAC Exh. 2).

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

testing."); ¶142 ("[T]his is the first fire.").[19]  Defendants argued that these fires involved "prototypes" and the **battery pack** design changed in the six months between the December 2011 fire and the delivery of Model S cars to consumers in June 2012.  *See* MTD Reply at 2:11-3:11 (citing SAC ¶57 and CW7's statement the "**battery**" was undergoing changes "in the months prior to Model S production.").  Plaintiffs cited CW1 and CW5, who said the battery pack was *not* altered after adoption of the Panasonic batteries (¶¶83, 102); SUPPCW16 strongly corroborates this view, as discussed *supra* at 9:13-21.  Plaintiffs also cited ample case law for a duty to disclose even if "prototypes" were involved, rendering Defendants' argument that Rule 11 was violated (*see* Def. Br. at 6:3-18) unavailing.  *See* MTD Opp. at 12:1-11 and n.7 at 12:21-26 (citing *Hanon*, 976 F.2d at 502-503; *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989); *In re Pfizer, Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 629-630, 635-636 (S.D.N.Y. 2008); *In re Viropharma, Inc. Sec. Litig.*, No. Civ. A. 02-1627, 2003 WL 1824914, at *6 (E.D. Pa. Apr. 7, 2003); *Glassman v. Computervision Corp.*, 90 F.3d 617, 635 (1st Cir. 1996); *In re Dura Pharm., Inc. Sec. Litig.*, No. 99 CV 0151-L (MLLS), 2000 WL 33176043, at *8 (S.D. Cal. July 11, 2000)).[20]

These central parts of the SAC accounted for the vast majority of the FAC's substantive text, the SAC's substantive text, and the parties' MTD briefs.  *See* Exh. 4.  Together, they alone evidence that the *complaint* was **not** legally or factually baseless and that Lead Counsel **had** conducted a reasonable and competent inquiry before signing and filing it.  They also evidence that the *claims* (*i.e.*, violation of (i) §10(b) and Rule 10b-5 and (ii) §20(a)), though ultimately unsuccessful, were warranted by existing law, or a nonfrivolous argument for extension, modification, or reversal of existing law or establishment of new law.[21]  The *Holgate v. Baldwin* standards, discussed *supra* at 14:12-22, are readily met.  Rule 11

---

[19]   In seeking dismissal, Defendants essentially argued that if Tesla engineers intentionally induced the Fremont fire, it could not have been via a 'crash test' - - even though the uncontested Fremont Fire Department report, which they cite, described it as a "crash fire test."  *See* MTD Reply at 3:23-27.  Nothing in the record supports this contention, and the two concepts are not mutually exclusive.
[20]   The court dismissed for a few reasons, chiefly the SAC's failure to sufficiently plead that the market would have viewed disclosure of the Pre-Class Period Fires as material under *Basic v. Levinson*, 485 U.S. 224 (1988).  *See* MTD Order at 11:7-14.  Plaintiffs respectfully disagree and intend to appeal.
[21]   *McMahon*, 2000 WL 1071828 at *7 ("In its decision whether to impose sanctions, the district court may consider… whether and how much case law the party opposing sanctions has cited...").

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

sanctions are not warranted.[22]

Tellingly, Defendants cite almost no decisions from within the Ninth Circuit, and the few they do cite either *refuse* to impose sanctions or impose them under extreme circumstances demonstrating, by comparison, that the high threshold for sanctions is not met here.  *See* Def. Br. at 4:8-12, 5:17-20, citing *Holgate*, 425 F.3d 671 (sanctions imposed where plaintiffs claimed to be a protected class under 42 U.S.C. §1985(3) of "consumers looking to build their dream homes" and failed to allege any acts in furtherance of a conspiracy); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 234207, at *5 (N.D. Cal. Jan. 21, 2014)(denying sanctions motion); *Stiglich v. Contra Costa Cnty. Bd. of Sup'rs*, 106 F.3d 409, 1997 WL 22410, at *8 (9th Cir. 1997) (affirming denial of fees).[23]

### C.    The Only Other Allegations At Issue In The Motion Do Not Justify Sanctions

The only other allegations attacked by the Motion do not justify any finding of Rule 11 violation, let alone a "substantial failure" of the SAC to comply with Rule 11(b) as would be necessary to justify an attorney's fees sanction.  They fall outside the lawsuit's core, took up few paragraphs in the FAC and SAC and few (if any) lines in motion to dismiss briefing (*see* Exh. 3), and, according to Defendants, were addressable with minimal effort.  Frankly, had Defendants complied with the Rule 11 "safe harbor," Plaintiffs might have considered withdrawing these allegations, with minor impact on the lawsuit, leaving the parties and the Court to focus on just its core without a Rule 11 dispute.  Their impact on the Rule 11 analysis is thus *de minimus* within the meaning of 15 U.S.C. 78u-4(c)(3)(B)(ii).

<u>Tennessee Fire</u> (Def. Br. at 6:20-7:2).  Defendants urge sanctions because "Plaintiffs' allegations that Musk misrepresented the circumstances of the…Tennessee fire[ ] were frivolous."  *See* Def. Br. at

---

[22]  Notably, the SAC's allegations regarding the likelihood of Model S fires (Def. Br. at 7:3-8) satisfy Rule 11 for failure to disclose the Decisions Compromising Safety and Pre-Class-Period fires alone; those regarding the Washington fire (*see* Def. Br. at 6:20-7:2) satisfy Rule 11 for the same reasons and also failure to disclose the Mexico fire. *See also* ¶¶149-150, 158-159, 177, 184-186.  As to likelihood of fires, as Defendants concede, Musk never adjusted his "five times less likely than a gasoline car" metric, despite three Class Period fires in the small Model S fleet.  *See* MTD Opp. at 17:16-20.

[23]  Indeed, this Court's prior decisions denying sanctions illustrate why the high threshold for sanctions is not met here.  *See, e.g., Johnson v. Hewlett-Packard Co.*, No. C 09-03596 CRB, 2014 WL 3703993, at *6 (N.D. Cal. July 24, 2014); *SF Chapter of A. Philip Randolph Institute v. U.S. Envt'l Prot. Agency*, No. C 07-04936 CRB, 2008 WL 859985, at *5, *8 (N.D. Cal. Mar. 28, 2008); *Kotakis*, 2000 WL 1006541 at *6; *Nazir v. United Air Lines*, No. CV 09-01819 CRB, 2009 WL 2912518 (Sept. 9, 2009); *Betta Prods., Inc. v. Dyakon*, No. C 05-02274 CRB, 2008 WL 4167277, at *4 (N.D. Cal. Sept. 8, 2008).

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

6:20-28 and n.2.  **The SAC contains no such allegations**. All SAC paragraphs cited by Defendants concern events **predating** the Tennessee fire.  *See* discussion *supra* at 3:13-18, 12:10-18.

NHTSA Test Results (Def. Br. at 4:20-5:0).  The SAC attached the August 19, 2013 press release (*see* SAC Exh. 3), so its contents were undisputed and candidly presented; only the parties' *interpretations* were at issue.  *Scores above 5.0*: The SAC alleged NHTSA issued a statement, in response to the press release, clarifying it "does not **rate** vehicles beyond 5 stars." (¶¶126-127)  Defendants point to the press release text that "NHTSA does not **publish** a star rating above 5."  The different verb matters – the press release phrasing implied a rating that is *unpublished*; even NHTSA thought clarification was needed.  *Vehicle Safety Score (VSS)*: The SAC alleged the "combined record of 5.4 stars" VSS score was false (¶116), both because NHTSA does not rate above 5 stars and "does not rank or order vehicles within the star rating categories." (¶¶126-127)  Again, NHTSA thought clarification was needed.  *Id.*  These allegations, while unsuccessful, complied with Rule 11.  *Battery pack placement*: The SAC alleged the press release's statement touting the battery pack's low placement as ensuring "exceptional…safety" was misleading (¶117), based on the omission of the Pre-Class Period Fires and Decisions Compromising Safety, as discussed *supra*. This was Rule 11 compliant.  Defendants also failed to challenge this allegation in their MTD opening brief.  *See* MTD Opp. n. 10 (at 13:26-28).  *Scope of tests*: The SAC alleged the statement that Tesla "analyzed the Model S," "determine[d] the weakest points," and "retested" them until it scored 5 stars "no matter how the test equipment was configured" misleadingly encompassed the battery, battery pack and undercarriage.  (¶118) Given other specific references to battery placement (*see supra*) and the battery itself (¶119), and omission of the Pre-Class Period Fires and Decisions Compromising Safety, Rule 11 was met.

"Safest Car in America" (Def. Br. at 5:10-28).  The SAC challenged the "Safest Car in America" claim (¶¶122-124) when only 13,000 Model S's (all 14 months or less off the assembly line) existed (¶4) as false and misleading because NHTSA does not compare cars within the 5-star category and does not rate many direct competitors with safety-enhancing features, *e.g.,* Audis and Mercedes (¶124).  This allegation is supported by an Insurance Institute for Highway Safety study of 2009-2012 driver deaths finding that *nine* models, including Audis and Mercedes, had zero deaths.  *See supra* at 9:27-10:1.  The

22

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

SAC, citing multiple CWs, also listed a safety-related Model S recall (¶54(c)) and other pertinent undisclosed problems, *e.g.*, use of untested parts (¶¶59-65, 67-73), design flaws (¶¶66, 68), deviation from validation standards (¶¶70-72), management's refusal to slow production to remedy defects (¶¶64, 69). All the foregoing is strongly corroborated by SUPPCW15. *See supra* at 9:2-12. Tellingly, the "Safest Car in America" banner was removed from Tesla's website when this lawsuit was filed – and it never returned. This allegation was Rule 11 compliant. Neither Defendants' cited cases (*Benedict* and *Stiglich*) imposed sanctions. *See supra* at 21:8-10.

Lack of a "Recall" (Def. Br. at 7:9-8:10). The SAC pled uncontested, CW-supported allegations that: (a) Defendants feared a recall (¶¶17, 55, 153); (b) were engaged in ongoing negotiations with NHTSA to avoid one (¶200; Def. RJN Exh. 4) while Tesla tried to rapidly implement remedies (¶193); (c) only after remedies were implemented did NHTSA close its investigation, stating that doing so did not constitute a finding of no safety-related defect (¶¶199-200; Def. RJN Exh. 4); (d) these measures headed off a formal recall (¶153); (e) NHTSA's reiterated 5-star rating related to tests that do not cover the battery or undercarriage (¶¶108-111); and (f) the announcement of remedial measures drove Tesla's stock price down (¶190). It pled these measures were "tantamount" to a recall (¶194). Though unsuccessful, these allegations did not violate Rule 11, as further evidenced by Exhs. 18-20, showing NHTSA is highly understaffed and ill-equipped to handle new technologies and nearly all "recalls" are voluntarily done by carmakers influenced by NHTSA investigations. *See supra* at 10:2-12.

Q3 2013 Deliveries (Def. Br. at 8:13-28). The allegation regarding the effect of two Class Period fires on Q3 2013 vehicle deliveries that Tesla later **reported** – in an earnings report alleged to have been manipulated in violation of GAAP and SEC regulations (¶218) – was explained in the MTD Opp.[24] The allegation was not at issue in the MTD, because Defendants made no loss causation argument. After

---

[24] As explained in the MTD Opp. n.35 at 30:22-28, the SAC alleges: (a) Musk stated Tesla was "quite worried" over a "significant drop in demand" due to the Class Period Model S fires (¶217), which occurred over just 36 days; (b) Defendants manipulated Tesla's Q3 2013 earnings report, in violation of GAAP and SEC regulations, to conceal future liabilities from a guaranteed buyback program used to artificially boost sales (¶218); (c) in light of (a) and (b), it was a dispute of fact whether they also manipulated it to misstate Q3 2013 deliveries; and (d) reaction to the earnings release by analysts, who were cognizant of and influenced by the Class Period fires, drove a stock drop the next trading day.

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

receiving a redline specifically highlighting this allegation (*see* Exh. 8 at 58:21-59:2), Defense Counsel *assented* to its filing on June 7, 2014 and expressly stated with regards to it, "***We are not opposed to these amendments***." *See* Exh. 7.[25]  Thus, Defendants' arguments should be rejected.

    <u>Toronto Garage Fire</u> (Def. Br. at 9:1-5).  In moving to dismiss, Defendants argued "[t]here is an enormous difference between a spontaneous fire and a fire caused by a collision at highway speed."  *See* MTD Br. at 12 n.1 at 12:26-27.  In response, Plaintiffs sought judicial notice of an article detailing a spontaneous Model S fire in a garage, *i.e.* not part of a collision at highway speed.  *See* MTD Opp. at 18:18-19; Exh. 2 thereto.  There was nothing improper about this exceedingly minor briefing point.

### D.  Lead Counsel Conducted A Reasonable And Competent Inquiry

    Lead Counsel conducted a thorough, costly, competent investigation.  *See supra* at 6:13-10:12. Not only does the Motion not challenge the vast majority of the SAC's allegations (*see, e.g.,* all of ¶¶45-112), it assumes their *accuracy*.  Defendants cite no case awarding sanctions on a similar record.  Under *Holgate*, Defendants must establish that the ***complaint*** was ***both*** baseless ***and*** the inquiry was not reasonable and competent. The Motion improperly relies on a baselessness argument twice, in an improper attempt to satisfy both *Holgate* prongs.  *See* Def. Br. at 9:8-25.

    Defendants' argument about putting Plaintiffs "on notice" lacks merit.  The two referenced calls ***predated*** the FAC's filing, consisted of general denials, and were ***never*** followed by any proffer discrediting any allegation.  *See supra* at 2:11-24, 11:12-12:9.  Defense Counsel actively ***impeded*** the investigation and then ***assented*** to the SAC's filing, stating they were "***not opposed***" to it.  *See supra* at 2:25-3:5, 3:27-4:8, 12:19-14:2, 16:9-16. They cite no case imposing sanctions on such a record.[26]

---

[25]  It is disingenuous for Defendants to cite chronological inconsistency as a basis for sanctions in a Motion in which they themselves argue the chronologically impossible.  *See supra* at 12:10-18 and 12:27-28.  Certainly, their own presentation of such arguments guts the credibility of their stance.

[26]  For support that "[s]anctions ***under the PSLRA*** are required," Defendants cite only distinguishable cases ***predating*** the PSLRA (*see* Def. Br. at 9:14-25).  *See Sable v. Southmark/Environ Capital Corp.*, 819 F. Supp. 324, 327, 343 (S.D.N.Y. 1993)(third complaint repeated allegations that court specifically cautioned were "flatly contradicted"); *Aizuss v. Commonwealth Equity Trust*, 847 F. Supp. 1482, 1492 (E.D. Ca. 1993)(claims barred by statutes of limitation); *Kushner v. D.B.G. Prop. Investors, Inc.*, 793 F. Supp. 1161, 1181 (S.D.N.Y. 1992)(plaintiffs filed 27 frivolous complaints).

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

### III.    Defendants Should Not Be Awarded The Sanction Of Fees

The PSLRA limits presumptive fee awards to instances of "***substantial*** failure of any ***complaint*** to *comply* with any requirement of *Rule 11(b).*"  15 U.S.C. 78u-4(c)(3)(A)(ii) (emphasis added).  As discussed *supra*, the SAC's core allegations were Rule 11 compliant and justified pursuit of §10(b) and Rule 10b-5 and §20(a) claims.  The challenged allegations were largely at the lawsuit's margins, occupied scant space in the pleadings, and, per Defendants, required little effort to rebut; their impact, if any, on the Rule 11 analysis must be *de minimus* under 15 U.S.C. 78u-4(c)(3)(B)(ii).  Imposition of *any* sanction would be manifestly unjust under 15 U.S.C. 78u-4(c)(3)(B)(i) where Defense Counsel actively ***impeded*** the investigation, ***unconditionally assented*** to the SAC's filing after reviewing an advance copy and stating "***We are not opposed to these amendments***," failed to comply with Rule 11's "safe harbor," and seeks sanctions based on ***factually false*** arguments.  Under 15 U.S.C. 78u-4(c)(3)(B)(i), sanctions would cause serious reputational damage to Lead Counsel, thereby creating an unreasonable burden, while non-imposition will not cause a greater burden on Defendants, a corporation with a $25 billion market cap and its billionaire CEO, where their defense costs are under $175,000, they have not submitted detailed billing records substantiating claimed fees, and their non-compliance with the Rule 11 "safe harbor" deprived Lead Counsel of the chance to avoid sanctions when the FAC was filed back in April 2014.[27]  Defendants' cited cases do not counsel otherwise.[28]

### <u>CONCLUSION</u>

For these reasons, Plaintiffs and Lead Counsel respectfully urge the Court to deny the Motion.

---

[27] *See, e.g., ATSI Commc'ns*, 579 F.3d at 155 (in assessing if fees are reasonable under 15 U.S.C. 78u-4(c)(3) court should consider if failure to move for Rule 11 sanctions promptly increased costs).

[28] *See* Def. Br. at vii:12-28, 8:23-25, 11:20-12:6), citing *Abner Realty, Inc. v. Admin. Gen'l Svcs. Admin.*, No. 97 Civ. 3075 (RWS), 1998 WL 410958, at *4-*6 (S.D.N.Y. July 22, 1998) (both initial and ***post-dismissal amended*** complaints named wrong defendant – an error readily apparent in public documents provided by defendants); *In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 30, 34 (D. Conn. 2010)(CWs stated that problems did not arise until ***over a year after*** allegedly fraudulent descriptions of operational strengths).  In *Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13 (S.D.N.Y. 2000), plaintiffs alleged omission of *previously-disclosed* financial information while attempting to compensate with hyperbole (*id.* (citing *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 241-242 (S.D.N.Y. 2000)), despite the court's ***prior written decision discussing weakness of the claim at issue*** (*id.* at 16 (citing *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 115 (S.D.N.Y. 1999)); counsel tried to settle for attorney's fees, an improper purpose under Rule 11 (*id.* at *18).

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

Dated: February 27, 2015

Respectfully submitted,

**POMERANTZ LLP**

By:  _/s/ Matthew L. Tuccillo_
Jeremy A. Lieberman
Matthew L. Tuccillo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
           mltuccillo@pomlaw.com

Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Lead Counsel for Lead Plaintiff and the Proposed Class***

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Glancy  (#134180)
Robert V. Prongay (#270796)
1925 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:   lglancy@glancylaw.com
           rprongay@glancylaw.com

***Liaison Counsel for Lead Plaintiff, Plaintiffs and the Proposed Class***

Opposition to the Motion of Tesla Motors and Elon Musk Under Rule 59(e) to Amend the Judgment
By Conducting the PSLRA's Mandatory Rule 11 Inquiry and Imposing Sanctions
Case No. 3:13-CV-05216-CRB

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am over the age of 18 and not a party to the within action. My business address is 600 Third Avenue, 20th Floor, New York, New York 10016.

On February 27, 2015, I served the following document:

**OPPOSITION TO THE MOTION OF TESLA MOTORS AND ELON MUSK UNDER RULE 59(e) TO AMEND THE JUDGMENT BY CONDUCTING THE PSLRA'S MANDATORY RULE 11 INQUIRY AND IMPOSING SANCTIONS**

By posting the document to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as listed on the attached Court's ECF Service List.

And on any non-ECF registered parties:

By U.S. Mail:  By placing true and correct copies thereof in individual sealed envelope: with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence or mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 27, 2015, at New York, New York.


*s/ Matthew Tuccillo*
Matthew Tuccillo

# Mailing Information for a Case 3:13-cv-05216-CRB In Re Tesla Motors, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph M. Barton**
  joebartonesq@gmail.com

- **Charles Edward Elder**
  celder@irell.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,mmgoldberg@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,smutschall@zlk.com,nporritt@zlk.com,office@punzalanlaw.com

- **Colin T Roth**
  croth@irell.com

- **David Siegel**
  dsiegel@irell.com,kschmidt@irell.com,rgrazziani@irell.com

- **Matthew Laurence Tuccillo**
  mltuccillo@pomlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)